UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS P. SEYMOUR                     :
                                       :
             v.                        :        C.A. No. 09-526-ML
                                       :
CONTINENTAL AIRLINES, INC.             :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

    This matter is before the Court on Defendant's Motion for Judgment on the Pleadings

(Document No. 14), pursuant to Fed. R. Civ. P. 12(c).  Defendant, Continental Airlines, Inc., seeks

dismissal in its entirety of Plaintiffs' Amended Complaint (Document No. 2), which alleges that

Plaintiffs were victims of discrimination due to Plaintiff Seymour's physical disabilities.  Plaintiffs

have also moved to amend their Complaint a second time in order to add claims (Document No. 17),

to which Motion Defendant objects on the grounds of futility, i.e., failure to state legally viable

claims for relief. (Document No. 19).  According to the liberal amendment policy of the Federal

Rules, Fed. R. Civ. P. 15(a)(2), the Court hereby grants Plaintiffs' Motion to Amend their

Complaint.  In the interest of judicial economy, the Court has considered the futility arguments

Defendant sets forth in its Objection (Document No. 19) as a supplement to its Motion for Judgment

on the Pleadings and applied those arguments to the additional counts.

    The Motion for Judgment on the Pleadings has been referred to me for preliminary review,

findings and recommended disposition.  See 28 U.S.C. § 636(b)(1)(B); LR Cv 72.  After reading the

parties' memoranda and considering relevant legal precedent, I recommend that Defendant's Motion be GRANTED as to all claims in the Second Amended Complaint.

**Facts**

The factual scenario presented to the Court is extremely limited.  Plaintiff Thomas P. Seymour suffers from Arthrogryposis Multiplex Congenita, Crohn's Disease and Panic Disorder. Seymour, who uses a wheelchair, was traveling with his Personal Care Assistant, co-Plaintiff Karla Sherman,[1] on June 27, 2009.  Apparently, they were traveling from Hawaii on their way home to Rhode Island.  Seymour and Sherman had booked, and paid for tickets on, Continental Airlines Flight 503 for the Los Angeles to Newark leg of the trip.  They had separately purchased round-trip tickets from another airline for their excursion from Los Angeles to Hawaii.  However, after arriving at the Los Angeles Airport, Continental Airlines refused to allow Seymour to board the plane, citing its "advance notice" or "late check-in" boarding policy.  Continental also refused to provide Plaintiffs with a hotel room or food.  Consequently, Plaintiffs were stranded overnight at the airport and were forced to sleep on the floor because they did not have enough money left for a hotel.  In the Second Amended Complaint, Plaintiffs provide few details of these events.  They describe the night at the airport as "Kafkaesque" and add that three airport police officers were required to lift Seymour from the floor, back into his wheelchair.

Plaintiffs' Proposed Second Amended Complaint includes six counts, alleging violations of federal law, California state statute, and state common law.  Although Sherman has intervened in the lawsuit based on association, none of the claims alleges an injury or violation suffered by her. Plaintiffs appear *pro se*.

---

[1] This Court permitted Ms. Sherman to intervene in the action on March 1, 2010.

**Standard of Review**

In analyzing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a court must accept the plausible allegations of the non-movant as true, and draw reasonable inferences in his (or her) favor. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The United States Supreme Court, in abrogating the frequently-cited Conley v. Gibson, 355 U.S. 41 (1957), restated the proper pleading standard as follows: "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

More recently, in Ashcroft v. Iqbal, the Court further refined the standard, explaining that, while a court must accept the plaintiff's version of the facts as long as those facts are plausible, it need not accept as true formulaic legal conclusions set forth in the complaint. 129 S. Ct. at 1950.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

Because both Plaintiffs are representing themselves in this matter, the Court will analyze the Complaint with leniency, and apply the standards liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

As for choice of law, the Court will look to California law for the pendent state law claims, Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), but will rely on guidance from the First Circuit to analyze the federal statutory claims and other federal issues. See Island View Residential

Treatment Ctr. v. Blue Cross Blue Shield of Mass., C.A. No. 07-10581-DPW, 2007 WL 4589335 at *9 (D. Mass. Dec. 28, 2007).

**Analysis**

**Count I**

In Count I, Plaintiffs allege that Defendant violated Seymour's rights pursuant to the federal Air Carrier Access Act of 1986 ("ACAA"), 49 U.S.C. § 41705 (and/or its implementing regulations at 14 C.F.R. 382), by refusing to transport him because of his disability. This federal statute prohibits air carriers from discriminating against any individual based on a physical impairment. Defendant asserts that this Count must be dismissed because the federal statute is designed to be enforced by the federal Department of Transportation ("DOT") only and does not provide an individual with a private right of action to sue an airline.

Under the ACAA, the DOT is charged with investigating complaints against airlines and compelling compliance with the statute, including through court action. The statute does not provide for an express private right of action against an allegedly discriminatory airline. Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 568 (8th Cir. 1989).

However, the Tallarico Court was one of several courts that held that Congress had intended to imply a private cause of action when the ACAA was enacted. See id. at 570; Shinault v. Am. Airlines, Inc., 936 F.2d 796, 800 (5th Cir. 1991). In both Tallarico and Shinault, the courts permitted the award of compensatory and emotional distress damages to plaintiffs aggrieved by circumstances apparently similar to those alleged herein. However, in 2001, the Supreme Court rendered a decision in Alexander v. Sandoval, 532 U.S. 275 (2001), which set forth a more restrictive standard for inferring private rights of action and private remedies in federal statutes when they are not

expressly established.  Sandoval analyzed the disparate-impact regulations promulgated under Title VI of the Civil Rights Act, but its rationale is generally applicable to all federal statutes. Congressional intent to create a private cause of action must be clearly articulated before such a right may be enforced by courts, "no matter how desirable that might be as a policy matter, or how compatible with the statute."  Id. at 287.  See also Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002) (...where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.).

Since Sandoval, federal courts have changed direction on the issue of the existence of a private right of action under the ACAA.  In Love v. Delta Air Lines, 310 F.3d 1347 (11th Cir. 2002), the Court of Appeals reversed the lower court's ruling that the ACAA included an implied private right of action.  Id. at 1349.  Guided by Sandoval, the Court carefully parsed the statutory language, paying particular attention to the enforcement mechanisms expressly set forth therein.

> The explicit provision of these elaborate enforcement mechanisms strongly undermines the suggestion that Congress also intended to create by implication a private right of action in a federal district court but declined to say so expressly.  Indeed, the enforcement scheme created by Congress and augmented by the DOT creates so strong a suggestion that Congress did not intend to create a private right of action that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute (such as language making the would-be plaintiff a member of the class for whose benefit the statute was enacted) suggest the contrary.

Id. at 1357-1358 (citations and quotation marks omitted).  The Love Court acknowledged the contrary conclusions of Tallarico and Shinault, but pointed out that these cases both pre-dated Sandoval, and consequently relied on an obsolete analytical test.  "Following Sandoval," the Love

Court concluded, "we may not engage in a similarly wide-ranging interpretive inquiry." Id. at 1359. In Boswell v. Skywest Airlines, Inc., 361 F.3d 1263 (10th Cir. 2004), the Tenth Circuit followed suit, dismissing the ACAA claim of a disabled passenger who sued the airline for its refusal to provide special accommodation for her on a flight.

The First Circuit has yet to address this particular issue in the context of an ACAA claim. However, in Bonano v. East Caribbean Airline Corp., 365 F.3d 81 (1st Cir. 2004), it undertook a post-Sandoval analysis of the Federal Aviation Act and its regulations. Bonano's claims were initially dismissed by the District Court as time-barred. On appeal, the First Circuit was compelled to address the issue of whether or not the Federal Aviation Act included a private right of action, because this claim was the sole basis for federal jurisdiction. Id. at 83. Dismissing the case, the First Circuit echoed Sandoval's reasoning, "A private right of action, like substantive federal law itself, must be created by Congress." Id. at 84.

Because the ACAA, like the Federal Aviation Act, does not expressly provide a right of action or a remedy for a private individual to sue an airline, the Court recommends that Plaintiffs' Count I be dismissed.

**Count II**

In Count II, Plaintiffs allege that Plaintiff Seymour was discriminated against because of his disabilities by Defendant's imposition of a discriminatory "late check-in" policy and by Defendant's failure to reasonably modify the policy. Seymour asserts his rights were violated under certain sections of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12188. Sherman claims associational standing under 42 U.S.C. § 12182(b)(1)(E). The Court

assumes for purposes of this Motion that Seymour is a disabled person as defined by  42 U.S.C. §
12102(2).

      The pertinent ADA sections cited by Plaintiffs, 42 U.S.C. §§ 12181-12188, expressly
exclude aircraft from the list of transportation systems covered by the statute.  <u>See</u> 42 U.S.C. §
12181(4) and (10).  Although there has been some ambiguity as to the line between what happens
in the airport and what happens on the plane, courts have consistently excluded claims against
airlines from the reach of the ADA, directing plaintiffs instead to the ACAA discussed above in
Count I.  <u>See</u> <u>Perez-Ramos v. Spirit Airlines, Inc.</u>, Civil Action No. 08-1574 (SEC), 2009 WL
890484 at *2 (D.P.R., March 25, 2009); <u>Kerner v. Mendez</u>, No. C-08-04528 EDL, 2009 WL
1226998 at *3 (N.D. Cal., May 1, 2009); <u>Thomas v. Northwest Airlines Corp.</u>, No. 08-11580, 2008
WL 4104505 at *5 (E.D. Mich., Sept. 2, 2008); <u>Ruta v. Delta Airlines, Inc.</u>, 322 F. Supp.2d 391, 401
(S.D.N.Y. 2004); <u>Access Now, Inc., v. Southwest Airlines Co.</u>, 385 F.3d 1324, 1332 (11th Cir.
2004); <u>Love v. Delta Air Lines</u>, 179 F.  Supp.  2d 1313, 1316  (M.D. Ala. 2001), <u>rev'd on other
grounds</u>, 310 F.3d 1347 (11th Cir. 2002).

      While Plaintiffs were in the airport terminal when the alleged discriminatory actions took
place, it is the airline's policy about which they complain (not, for example, terminal access).  The
Court concludes that airlines' boarding and check-in policies fall into the ADA's "aircraft"
exclusion, and, consequently, recommends that Count II of Plaintiffs' Second Amended Complaint
be dismissed.

**California State Law Claims**

      Plaintiffs' claims in Counts III, IV, V and VI are brought under California state law.  One
claim is statutory and three are common law claims.  All face the same obstacle: the federal Airline

Deregulation Act of 1978, most specifically 49 U.S.C. § 41713(b)(1), which prohibits the States from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." According to the Supreme Court, Congress deregulated the airlines because it "determined that maximum reliance on competitive market forces would favor lower airline fares and better airline service," and it included a broad preemption provision "to ensure that the States would not undo federal deregulation with regulation of their own." Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 367 (2008) (citations and quotations omitted).  Since its enactment, the preemption section of the Airline Deregulation Act ("Deregulation Act") has been the subject of much litigation.  Two of the most frequently disputed issues are particularly relevant to the analysis of the present claims: (1) what activities precisely constitute, in the words of the statute, those "related to" the "service of an air carrier"?; and (2) how broad a preemptive sweep over state law claims did Congress intend the statute to exercise?  Before addressing each count of the Second Amended Complaint in turn (though out of numerical order), the Court will summarize the pertinent law on these issues.

**Air Carrier "Services"**

In Northwest Airlines, Inc., v. Duncan, 531 U.S. 1058 (2000), the Supreme Court denied a petition for certiorari from the Ninth Circuit in a case involving a personal injury claim based on an airline's smoking policy.  Citing division among the Courts of Appeal, three Supreme Court justices urged their colleagues to hear the case, with Justice O'Connor writing that "Resolution of this question would provide needed certainty to airline companies." Id.  The Ninth Circuit had held that "service" included "prices, schedules, origins and destinations of the point-to-point transportation

of passengers, cargo, or mail," but not in-flight beverage service, "personal assistance to passengers, the handling of luggage, and similar amenities." Id. (quoting Duncan v. Northwest Airlines, Inc., 208 F.3d 1112, 1114-1115 (2000)).  In a survey of the appellate courts' decisions, Justice O'Connor wrote that the Ninth and Third Circuits have used a narrow definition of "service," while the Fifth, Fourth and Seventh Circuits "have adopted a much broader definition."  Id.  The First Circuit is listed with the "broad definition" circuits in a "see also" directive, which cites to Chukwu v. Bd. of Dir. British Airways, 889 F. Supp. 12, 13 (D. Mass. 1995), aff'd mem., 101 F.3d 106 (1st Cir. 1996).

In Chukwu, the plaintiff's brother was prevented from boarding a flight although the plaintiff had purchased a ticket for him.  Citing a variety of cases from the "broad definition" camp, the District Court held that plaintiff's tort claims related to an airline "service."

> The gist of Azubuko's complaint is that British Airways wrongfully prevented his brother from boarding a flight, a process uniquely within the service provided and controlled by air carriers. His claims, therefore, are clearly related to an airline "service" within the meaning of §1305(a)(1).[2]

889 F.Supp. at 14.  See also DeTerra v. Am. West Airlines, Inc., 226 F. Supp. 2d 274, 277 (D. Mass. 2002) (Airline's activities related to pre-boarding and boarding constitute "service.").  Chukwu v. British Airways was affirmed by the First Circuit in an unpublished table decision at 101 F.3d 106 (Table) (1st Cir. 1996).

However, since Chukwu, the district courts in our Circuit have varied on this issue.  In 1999, the District Court of Massachusetts held that the failure of an airline to include an automatic external defibrillator in its onboard emergency medical kit was not related to the airline's "service."  Somes

---

[2]  In 1994, Congress made minor changes to the Act's wording and changed the numbering system so that 49 App. U.S.C. § 1305(a)(1) is now codified at 49 U.S.C. § 41713(b)(1).

v. United Airlines, Inc., 33 F. Supp. 2d 78, 83 (D. Mass. 1999). See also Stone v. Frontier Airlines, Inc., 256 F. Supp. 2d 28, 40 (D. Mass. 2002) ("Requiring airlines to carry more sophisticated emergency medical equipment is distinct from the "services" referred to by Congress in the preemption provision of the Deregulation Act."). In both Somes and Stone, plaintiffs were permitted to litigate tort claims against the airlines.

A more drastic departure from Chukwu is Alshrafi v. Am. Airlines, Inc., 321 F. Supp. 2d 150 (D. Mass. 2004). In this case concerning events that took place a few weeks after 9/11, an Arab-American passenger was barred by the plane's captain from boarding his flight at Logan Airport. Although the facts were in dispute, the plaintiff claimed that he was excluded because of his race and apparent religion affiliation. The Court extensively reviewed the state of the law on the interpretation of airline services and wrestled with the precedential impact of Chukwu, but ultimately determined that the plaintiff's claims of racial discrimination and intentional infliction of emotional distress were not related to "service" and therefore not preempted.

> ...[I]t still holds true that racial discrimination and intentional infliction of emotional distress have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service under the Act's express preemption provision.

Id. at 162 (omitting internal quotations marks and other punctuation).

The facts of Alshrafi, however, are distinguishable from this case. Plaintiffs herein complain about Defendant's late check-in policy and Defendant's refusal to modify that policy to accommodate Seymour's special needs. An airline's boarding procedures are part of an airline's service, and those procedures are different in kind than the allegedly discriminatory actions of the airline captain in Alshrafi. Consequently, this Court concludes that Defendant's actions in the present case – refusing to modify its boarding procedures – are related to an airline service. This

-10-

conclusion is supported by legislative history included in the dissent in <u>Morales v. Trans World</u>

<u>Airlines, Inc.</u>, 504 U.S. 374, 419 (1992).  The dissenters argued for a more limited interpretation of

the Deregulation Act's preemption provision than the broad sweep endorsed by the majority.

Nevertheless, they indicated that boarding procedures constitute a "service," when they quoted

approvingly from the Civil Aeronautics Board's interpretation of the preemption provision:

> Accordingly, we conclude that preemption extends to all of the
> economic factors that go into the provision of the *quid pro quo* for
> passenger's fare, including flight frequency and timing, liability
> limits, reservation and boarding practices, insurance, smoking rules,
> meal service, entertainment, bonding and corporate financing....

<u>Id.</u> at 424.  Based on the above reasoning and legislative history, this Court concludes that

Defendant's late check-in boarding policy is related to airline "service."

### The Breadth of the Act's Preemption Provision

Identifying Defendant's boarding policy as a "service," however, does not complete the

preemption analysis.  The Supreme Court has held that some airline services are so minimally or

tenuously connected to the free market goals of deregulation as to avoid preemption.  In <u>Morales</u>,

the Supreme Court, while holding that the state statutes in question were preempted, noted that

"some state actions may affect airline fares in too tenuous, remote, or peripheral a manner to have

a pre-emptive effect." <u>Id.</u> at 390.  The Court revisited this dicta in <u>Am. Airlines, Inc., v. Wolens</u>, 513

U.S. 219 (1995), a case that reflects the extent of the controversy in this area of the law.  The

majority held that the Deregulation Act prevented the states from regulating air carriers, but that

courts could enforce the terms of contracts entered into by the airlines and their customers.  <u>Id.</u> at

222. In <u>Wolens</u>, plaintiffs were participants in a frequent flyer program, whose terms and conditions

had been retroactively changed by the airline.  The outcome of the Supreme Court's decision was

that the plaintiffs' claims based on Illinois' Consumer Fraud Act were preempted because of "the potential for intrusive regulation of airlines business practices inherent in state consumer protection legislation typified by the Consumer Fraud Act." Id. at 227-228.  However, the claims that alleged breach of contract, based on the same set of facts, were permitted to go forward.

> We do not read the ADA's preemption clause, however, to shelter
> airlines from suits alleging no violation of state-imposed obligations,
> but seeking recovery solely for the airlines' alleged breach of its own,
> self-imposed undertakings.

Id. at 228.   The Court's rationale was based on the free market principles underlying the Deregulation Act: "Market efficiency requires effective means to enforce private agreements." Id. at 230.

While Wolens addressed breach of contract claims only, several other district court cases from our Circuit, including Alshrafi, discussed above, have concluded that state-based tort claims should escape preemption because of their minimal and tenuous connection to the goals of the Deregulation Act.  In another post-9/11 case arising at Logan Airport, Kingsley v. Lania, 221 F. Supp. 2d 93 (D. Mass. 2002), the plaintiff got into an altercation with Delta airline staff over the size of his luggage.  Delta prevented him from boarding the flight he was booked on, but permitted him to fly the next day.  The plaintiff brought state law claims for breach of contract, negligence, conversion (for taking the film from his camera) and unfair and deceptive business practices.  Delta removed the plaintiff's case to federal court, and the District Court for Massachusetts granted the plaintiff's motion to remand the case to state court, holding that the claims were not subject to the kind of complete preemption that would require their adjudication in federal court.  Id. at 98.

> The fact that "airline safety" may be involved or asserted as a defense
> is not enough to preclude state law claims without further analysis.
> It is, at a minimum, questionable whether the instant dispute, which

> took place well before boarding and far from the plane, was the type
> of dispute which would be preempted....Moreover, a strong argument
> may be made that even if the instant dispute might conceivably affect
> a 'price, route, or service' of an air carrier, the causal connection is
> far too 'tenuous, remote, and peripheral' to warrant preemption in
> this case.

Id. at 98.

In Skydive Factory, Inc., v. Maine Aviation Corp., 268 F. Supp.2d 61 (D. Me. 2003), the District Court of Maine granted the plaintiff's motion to remand after the defendant removed the case to federal court based on the Deregulation Act.  The plaintiff's claims for breach of contract and negligence stemmed from property damage allegedly caused by defendant's improper inspection and maintenance of plaintiff's airplane.  Citing Wolens, the Court held that the plaintiff's contract claim was not preempted.  Id. at 62.  As for the tort claim, which the Court described as "less clear," the Court wrote,

> The parties agree that federal aviation law creates no express
> preemption, and that the question is whether there is 'field
> preemption.'  Most of the cases discuss personal injuries, not
> property damage, but I see no reason to distinguish between them.

Id. at 62. The cases referenced in Skydive Factory are personal injury cases from other circuits, which have determined that run-of-the-mill personal injury claims, such as might come about when stowed luggage falls out of the overhead compartment, are not preempted by the Deregulation Act. See Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1261 (9th Cir. 1998); Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995).  With all these cases in mind, the Court now turns to an analysis of Plaintiffs' state law claims to determine if they are too tenuous or peripherally related to airline service to be preempted.

**Count III**

In Count III, Plaintiffs allege that Defendant violated California Civil Code, Sections 51 through 54.1, by discriminating against Seymour "based on his disabilities and/or medical condition."  (Document No. 17-1, ¶ 8).  These Sections of the California Code, known as the California Disabled Persons Act and the Unruh Civil Rights Act, prohibit discrimination based on physical disability in all public areas and medical facilities and allow lawsuits for damages in cases of violations.  See Cal. Civ. Code § 54.3.  Defendant argues that this claim is preempted.

Despite the exceptions that have been carved from the Deregulation Act's preemptive grasp, the Court is convinced that these California anti-discrimination laws represent the kinds of state regulation that the Act's preemption clause was designed to address.  In Wolens, the case which exempted contract claims from the Act's preemption, the Supreme Court explained:

> Finally, the ban on enacting or enforcing any law "relating to rates, routes, or services" is most sensibly read, in light of the ADA's overarching deregulatory purpose, to mean "States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier."

513 U.S. at 229, n.5.

Because California's Disabled Persons Act and Unruh Civil Rights Act represent the State's effort to impose its public policy, it is preempted by the federal Airline Deregulation Act. Consequently, the Court recommends that Plaintiff's Count III be dismissed.

**Count V**

In Count V, Plaintiff alleges intentional infliction of severe emotional distress.  In Chukwu v. Board of Directors British Airways, the District Court held that all of the plaintiff's tort claims

arising under state law were preempted by the Airline Deregulation Act.  889 F. Supp. at 14.

<u>Chukwu</u>, discussed above, involved an airline's refusal to board a passenger because of a problem

with payment, or a problem with the passenger's documentation.  On the other hand, in <u>Alshrafi</u>, the

District Court allowed plaintiff's tort claims alleging that the airline had discriminated against him

when it refused to let him board his scheduled flight.  Faced with these seemingly conflicting

rulings, the Court is compelled to follow <u>Chukwu</u>, and so recommends the dismissal of Plaintiffs'

tort claim based on the preemption provision of the Deregulation Act.  The Court recommends this

course of action for two reasons.  The first is that <u>Chukwu</u> is the sole case on this issue to have been

affirmed by the First Circuit Court of Appeals, at <u>Azubuko v. Bd. of Dirs., British Airways</u>, 101 F.3d

106 (Table) (1st Cir. 1996).  Although this was an unpublished table decision, it has at least

persuasive precedential value and must be respected.[3]  Moreover, when the First Circuit has had

occasion to address the issue of preemption under the Deregulation Act, it has both times endorsed

a broad preemptive sweep.  In <u>French v. Pan Am Express</u>, 869 F.2d 1, 6 (1st Cir. 1989), the Court

held that a pilot could not invoke Rhode Island employment law in order to avoid the airline's drug

testing program. ("We infer from the Federal Aviation Act an unmistakably clear intent to occupy

the field of pilot regulation related to air safety, to the exclusion of state law.").  And more recently

in <u>Buck v. Am. Airlines</u>, 476 F. 3d 29 (1st Cir. 2007), the Court held that a group of people who sued

a number of airlines to recover certain fees charged in connection with unused, nonrefundable tickets

could not rely Massachusetts law to bring their claims.  Their claims, the Court held, were

preempted by the Deregulation Act because they related to price.  <u>Id.</u> at 34.

---

[3]  The Local Rules for the First Circuit, Rule 32.1(a), state that the Circuit's unpublished judgments and orders will be considered for "their persuasive value but not as binding precedent."

The second reason the Court believes Plaintiffs' tort claim is preempted relates to the specific facts of the present dispute, and the wrong that Plaintiffs seek to remedy.  Plaintiffs assert that Defendant's late check-in boarding policy operates to discriminate against Plaintiff Seymour, which discrimination was compounded by Defendant's refusal to modify its policy to accommodate him.  As a result, Plaintiffs assert that they suffered extreme emotional harm.  While the measure of damages may be different from those provided under the California Disability Act, the wrong complained of and the ultimate impact are the same: Plaintiffs want to employ state law to punish Defendant for failing to modify its late check-in boarding policy in order to accommodate passengers like them and thus compel future modifications for other similarly situated passengers.[4]  That gets to the essence of the type of state regulatory/public policy action that Deregulation Act was designed to prevent.  Consequently, this Court recommends that Count V be dismissed.

**Count VI**

In Count VI, Plaintiffs allege that Defendant breached the duty of care owed by a common carrier to its passengers.  As with the intentional infliction of emotional harm claim, this common law negligence claim would effectively operate to compel the airline to alter its late check-in boarding policy to accommodate those with physical disabilities in contravention of the Deregulation Act, 49 U.S.C. § 41713(b)(1).  Consequently, as with Count V, this Court recommends it be dismissed.

---

[4]  During the Rule 16 conference, Seymour indicated that in addition to monetary relief, he was seeking to modify Defendant's policies regarding disabled passengers and to require it to improve employee training on dealing with disabled passengers.

**Count IV**

Plaintiffs' final count is a two-pronged contract claim, asserting that Defendant breached its Contract of Carriage, as well as the Implied Covenant of Good Faith and Fair Dealing. The Contract of Carriage is the standard agreement between Defendant and its passengers, not an individualized agreement particular to these Plaintiffs. Certain kinds of contract claims are the one clear exception to the Deregulation Act's preemption that has been permitted by the Supreme Court in American Airlines v. Wolens:

> The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

513 U.S. at 232-233.

Defendant attaches the Contract of Carriage to its Opposition to Plaintiffs' Motion to Amend (Document No. 19-1) and urges the Court to review it. Defendant argues that Plaintiffs' contract claim relates to an airline service, and the relief requested would require the Court to enlarge or enhance what the parties bargained for. Although Defendant's argument appears on its face to be logical, the Court will refrain from the requested scrutiny of the Contract of Carriage. The particulars of Plaintiffs' contract claim are not clear to the Court on this record. Plaintiffs' minimal factual pleading style poses a problem under Ashcroft v. Iqbal, which requires litigants to flesh out conclusory legal claims with a sufficient factual basis. 129 S. Ct. at 1949. However, the Court gives the benefit of the doubt to Plaintiffs given their pro se status. Consequently, the Court determines that Plaintiffs' contract claim might, if elaborated upon, escape preemption.

-18-

Plaintiffs have invoked this Court's subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).  (Document Nos. 1, ¶ 2; 2, ¶ 2; and 17-1, ¶ 3).  Since this Court is recommending dismissal of Plaintiffs' federal counts, there would no longer be a basis for federal question jurisdiction under 28 U.S.C. ¶ 1331 and thus a question as to whether the Court should continue to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over a state law claim when it has dismissed all claims over which it has original jurisdiction.  Since this Court is recommending dismissal of Plaintiffs' federal claims and this case is still in its early stages, the Court also recommends that supplemental jurisdiction over Count IV be declined and that such Count be dismissed without prejudice to refiling in state court. As a result, the Court recommends that Plaintiffs' Count IV be dismissed without prejudice.

**Conclusion**

For the reasons set forth above, I recommend that Defendant Continental Airlines' Motion for Judgment on the Pleadings (Document No. 14) be granted as to all Counts in Plaintiffs' Second Amended Complaint.  Counts I, II, III, V, and VI are hereby dismissed; Count IV is dismissed without prejudice. Also, Plaintiffs' Motion to Amend (Document No. 17) is GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc., v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 11, 2010